UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS AT BOSTON

_____

ALICIA HASLAM,

      Plaintiff,

-v-                                                                    CIVIL NO. 05-10809 RWZ


SHUSTER LABORATORIES, INC.

      Defendant.
_____


**MEMORANDUM OF FACTS AND LAW IN SUPPORT OF THE
PLAINTIFF'S MOTION TO COMPEL TESTIMONY
<u>FROM NON-PARTY WITNESSES AND FOR SANCTIONS</u>**


<u>**Background**</u>

      Plaintiff alleges that she endured a hostile work environment and was unlawfully terminated as an Account Manager at Shuster for invoking her rights under the Family Medical Leave Act as well as violations of the Americans with Disabilities Act and Chapter 151B of the Massachusetts General Laws.[1]

      In her Rule 26(a)(1) disclosures, Plaintiff disclosed Maryann Sullivan (an Account Manager) and Scott Williams (a Project Manager) as individuals with knowledge (herein after referred to collectively as "the witnesses").  See Exhibit A.  These individuals are former co-workers.

_____

[1] Plaintiff also has alleged violations of the Fair Labor Standards Act as well as the Employment Retirement Income Security Act.  Based on the discovery thus far obtained, the ERISA claim may be withdrawn.

In a letter dated April 7, 2006, the undersigned advised Defendant (through counsel) of Plaintiff's intent to depose Mr. Williams and Ms. Sullivan. The undersigned inquired if they were still employed by Shuster. Additionally, the undersigned stated the following:

> …as I understand it, based on their position in this company and their role in the underlying facts that give rise to the Plaintiff's claims, neither of these individuals would be in a position as to be considered a party as contemplated by Mass.R.Civ.P. 4.3. If that is <u>not</u> the case, please advise me immediately.[2]

Defendant's counsel sent a letter dated April 12, 2006 which addressed the "recent letters" to him, yet offered no response to the inquiry of April 7. After receiving no response, subpoenas were sent to Ms. Sullivan on April 28, and Mr. Williams on May 5.

In an email dated June 1, 2006, the undersigned again asked Defendant's counsel if he was representing the two witnesses. Defendant's counsel advised the undersigned for the first time that he was.

It is undisputed that these non-party witnesses are not corporate officials, and neither of them was in any control group for the purposes of the issues presented by this case. None of their actions have any causal relationship to the allegations raised by Plaintiff, and nothing they can say can be construed as an admission against the corporate Defendant.

---

[2] The letter did not cite the correct rule. The correct rule is Mass.R.Prof.Cond. 4.2.

**<u>Maryann Sullivan</u>**[3]

Maryann Williams testified:

1.    She has no concerns that anything she did or said resulted in Ms.

Haslam's termination (Sullivan at 61).

2.    She met with Scott Williams, HR Director Claudia Montez[4] and

Defendant's counsel to prepare for the deposition.  While she

testified that it was only to discuss where the deposition was, the

meeting lasted approximately 15 minutes (61).  She also met with

counsel briefly before the deposition.

3.    She was told by Claudia Montez, Director of Human Resources,

that Shuster's counsel would "accompany" her to the deposition

(61).

4.    She never sought legal advice from Shuster's counsel (60).  She

never signed any retainer agreement with Shuster's counsel (67).

5.    Prior to the deposition she had no idea she had been designated by

the Plaintiff as a person with knowledge (59).

When asked about what was discussed at the meeting with her, Scott

Williams and counsel, Defendant's counsel objected on the grounds of attorney-

client privilege and instructed the witness not to respond to the question.[5]

---

[3] Exhibit B.

[4] Ms. Montez was one of Defendant's Fed.R.Civ.P. 30(b)(6) designees.

[5] This colloquy followed the instruction (Williams at 68-69):
Q.   Okay.  Can you tell me then what was discussed at the meeting on Friday?
              MR. O'CONNELL:  Hold on. Objection to form, and I instruct the witness not to
              answer on the basis of attorney-client privilege.

### Scott Williams[6]

Scott Williams testified:

1.      He attended the meeting with Ms. Sullivan, Ms. Montez and

        Defendant's counsel. (Williams at 98)

2.      He me with Mr. O'Connell a few minutes before Ms. Sullivan and

        Ms. Montez entered the room. (Williams at 99)

3.      Mr. O'Connell provided legal counsel during the meeting. (Williams

        at 100).  He "partially" sought out that legal counsel based on his

        concerns over Shuster's client's confidentiality. (Williams at 100)

4.      He did not retain Mr. O'Connell to represent him (Williams at 101).

        As a matter of fact, he seems to not understand how the

        relationship even works:

                Q.   With regard -- Did you ever hire Mr. O'Connell to

                represent you?

                MR. O'CONNELL:  Objection to form.

---

MR. MCLEOD:  Okay.  Is  Shuster taking the position -- well -- Strike. Can you
tell me on what basis you're asserting -- Shuster is asserting the attorney-client
privilege?
MR. O'CONNELL:  We are defendant [sic]lawsuit, Bill.
MR. MCLEOD:  Mm-hmm.
MR. O'CONNELL:  It's entirely normal course of business for a company to
represent an      employee -- present employee of the company that's being
deposed.  The attorney-client privilege runs through to that employee when
they're testifying for purposes of this case.
MR. MCLEOD:  I disagree with you.  There's case law on that that says that --
MR. O'CONNELL:  Go ahead, mark the deposition.
MR. MCLEOD:  I'm going to mark the deposition.  I just want to make sure that
the record is clear on this
MR. O'CONNELL:  You've had my statement.
MR. MCLEOD:  I do and I just want to make sure that the record is clear in case
you do want to respond.  I believe the case law is clear.  I do believe I'm entitled
to all the communications that you've had with Ms. Sullivan in light of her
testimony.  So with that we'll mark it, and I'll file a motion.

4

A. Personally, no.

Q. But the company hired him to represent you?

MR. O'CONNELL:  Objection to form.

BY MR. McLEOD:

Q. Is that your understanding?

A. I guess so.  Yeah.

(Williams at 107)

5.    He could not describe whether he was ever advised over the potential of a conflict of interest (Williams at 104).

6.    He contacted an attorney the day he received the subpoena for the purposes of seeking legal advice.  The attorney was a family member.  (Williams at 106-107).

7.    He was not concerned that he did something wrong in this case (Williams at 93), nor was he concerned that he might be sued (Id.).

When asked about what was discussed at the meetings, Defendant's counsel objected on the grounds of attorney-client privilege and instructed the witness not to respond to the question "to the extent that you don't reveal any legal counsel that was provided by me to you." (Williams at 99)

Defendant maintains the existence of the privilege precludes discovery of communications between the Defendant corporation's counsel and these non party witnesses.  Plaintiff seeks a full examination of all communications between these witnesses and Shuster's counsel.  Plaintiff also seeks sanctions.

---

[6] Exhibit C.

This motion follows.

## Argument

In federal court, the law of privileges is "governed by the principles of common law as they may be interpreted …. In light of reason and experience." In re Bevill, Bresler & Schulman Asset Management Corporation, 805 F.2d 120, 124 (3rd Cir. 1986)(citing Fed.R.Evid. 501). "The attorney-client privilege protects communications made in confidence by a client to his attorney." In re Grand Jury Subpoena, 274 F.3d 563, 571 (1st Cir. 2001)(citations omitted). "[T]he privilege applies only to the extent necessary to achieve its underlying goal of ensuring effective representation through open communications between lawyer and client. Id., [citing Fisher v. United States, 425, U.S. 391, 403, 48 L.Ed2d 39, 96 S.Ct. 1569 (1976).

The First Circuit follows the standards enumerated in a Third Circuit bankruptcy case: In re Bevill, Bresler & Schulman Asset Management Corporation, 805 F.2d 120 (3rd Cir. 1986). There are five "benchmarks that corporate employees seeking to assert a personal claim of attorney-client privilege must meet":

> First, they must show they approached [counsel] for the purpose of seeking legal advice.  Second, they must demonstrate that when they approached [counsel] they made it clear that they were seeking legal advice in their individual rather than in their representative capacities.  Third, they must demonstrate that the [counsel] saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise. Fourth, they must prove that their conversations with [counsel] were confidential. And fifth, they must show that the substance of their

6

conversations with [counsel] did not concern matters within the company or the general affairs of the company.

In re Grand Jury Subpoena, 274 F.3d 563, 571 (1st Cir. 2001)(emphasis added)[citing re Bevill, Bresler & Schulman Asset Management Corporation, 805 F.2d 120, 123 (3rd Cir. 1986); accord Grand Jury Proceedings v. United States, 156 F.3d 1038, 1041 (10th Cir. 1998); United States v. Int'l Bhd. of Teamsters, 119 F.3d 210, 215 (2d Cir. 1997);In re Sealed Case, 308 U.S. App. D.C. 69, 29 F.3d 715, 719 n.5 (D.C. Cir. 1994).

**1.    No attorney-client relationship exists between the non-party witnesses and Holland & Knight LLP**

Both witnesses admitted that they did not consult with Attorney O'Connell when they were subpoenaed.  In fact, when they aproached Human Resources to inquire about the subpoena, they were told that Attorney O'Connell would be "accompanying him."  None of the witnesses sought legal advice, and none of them have concerns about any personal liability stemming from the Plaintiff's termination of employment.  None of the employees signed any retainer agreement.

Despite the absence of these relevant factors – Defendant asserts an attorney-client privilege that covers not only counsel's communications with corporate officials, but also non-party witnesses who do not even qualify as parties for the purposes of Mass.R.Prof.Conduct 4.2.

The relationship between these witnesses and counsel does not satisfy any of the Bevill benchmarks.  Accordingly, there can be no privilege between Attorney O'Connell and these witnesses.  Plaintiff is entitled to a full examination on all communications with Defendant's counsel.

### 2.   Sanctions should be imposed for interfering with proper discovery of facts

Without any of the benchmarks being met, the "Friday meeting" and everything that was discussed and observed is open for discovery in this case. The non-party witnesses are not a part of the control group, and accordingly, the privilege between counsel and Shuster has, for the purposes of this meeting been waived (assuming communications took place between corporate officials and these non-party witnesses during the course of the meeting).

Defendant's counsel's assertion of representative status and privilege during the deposition of both parties is revealing.  During Ms. Sullivan's deposition, the following was stated on the record:

> It's entirely normal course of business for a company to represent an employee -- present employee of the company that's being deposed.  <u>The attorney-client privilege runs through to that employee when they're testifying for purposes of this case</u>.

Sullivan at 69 [emphasis added].

During Mr. William's deposition:

Q.   Did you consult with your own counsel concerning your deposition here today?

   MR. O'CONNELL:  Objection to form.

And again, Bill, for the record, and this applies to both Mary Anne [sic] Sullivan and to this witness.  And I'll state it again for the record, you're using the term own counsel.

   MR. McLEOD:  Mm-hmm.

8

MR. O'CONNELL:  I am representing them for purposes of these proceedings.

Williams, at 105.

There is a profound lack of disregard for precedent and policy on this issue.  Besides failing to establish any of the benchmarks, Defendant's counsel takes the position that employees of a Defendant corporation are automatically absorbed into the attorney-client relationship established by counsel and the corporation merely because of their status as employees.

The analysis of who is considered represented by counsel under the Rules of Professional Conduct is also instructive as to the issues presented by this motion.  "According to comment [4] to rule 4.2, an attorney may not speak ex parte to three categories of employees: (1) 'persons having managerial responsibility on behalf of the organization with regard to the subject of the representation'; (2) persons 'whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability'; and (3) persons 'whose statement may constitute an admission on the part of the organization.'  Messing, Rudavsky & Weliky, P.C. v. President & Fellows of Harvard College, 436 Mass. 347, 354 (Mass. 2002)(citing Mass. R. Prof. C. 4.2 comment [4]).

Neither Mr. Williams nor Ms. Sullivan would be considered "parties" for the purposes of the Rules of Professional Conduct.  They cannot be considered "parties" for the purposes of this case, and Defendant's counsel cannot legitimately claim the existence of an attorney-client relationship to these non-

party witnesses especially if the <u>Bevill</u> benchmarks have not been met. Moreover, there is no precedent supporting the notion that the attorney-client relationship extends to all employees of a corporation, regardless of status, whenever it is a Defendant in a lawsuit.

It is axiomatic that an average employee (not in a control group as described in <u>Messing</u>) who is served a subpoena in a pending federal lawsuit is likely to feel some sort of intimidation or concern.  It is after all a command to appear to testify in a proceeding governed by the Federal Rules of Civil Procedure.  In this case, despite being invited to contact Plaintiff's counsel, both employees went first to Human Resources where they were assured that the corporation's attorney would handle everything.  The <u>Bevill</u> benchmarks were never implicated.  This is fundamentally improper and it is fundamentally unfair to this Plaintiff and to the truth-seeking process that Defendant and its counsel boldly intercede between a third party witness and a subpoenaing party in such a manner.

An appropriate sanction is a curative instruction.  A finder of fact should be permitted to consider whether their testimony is tainted by this intercession by Defendant and Defendant's counsel.  This sanction is appropriate for two reasons: (1) to address the prejudice that this Plaintiff may have endured because of this intercession; and (2) to deter future conduct wherein corporate counsel attempts to improperly intertwine their relationships with employee-witnesses.

In this case, in addition to full disclosure, a sanction of a curative instruction is appropriate.

Respectfully submitted:
THE PLAINTIFF
Alicia Haslam

By her counsel:

DATED:        July 20, 2005

_/s/ William J. McLeod_____ _____
William J. McLeod, BBO. 560572
McLeod Law Offices, PC
77 Franklin Street
Boston, MA  02110
(617) 542-2956/phone
(617) 695-2778/fax
wjm@mcleodlawoffices.com

*EXHIBIT A*

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS AT BOSTON

_____

ALICIA HASLAM,

     Plaintiff,

-v-                              CIVIL NO. 05-10809 RWZ

SHUSTER LABORATORIES, INC.

     Defendant.

_____

## PLAINTIFF'S AUTOMATIC DISCLOSURE

Pursuant to Fed.R.Civ.P. 26(a)(1) and Rule 26.2 of the Local Rules of the

U.S. District Court for the District of Massachusetts, the Plaintiff in the above

captioned matter hereby discloses the following information relevant to the

disputed facts alleged with particularity in the pleadings:

    A.    Witnesses:

        1.    Alicia Haslam
             108 Pacific Street
             Rockland, MA  02370

Ms. Haslam is the Plaintiff in the above captioned matter, and she is
expected to have knowledge of the facts that give rise to the instant action, and
facts relating to the defenses asserted herein.

        2.    Claudia Montez
             Director of Human Resources
             Shuster Laboratories, Inc.
             85 John Road
             Canton, MA  02025

Ms. Montez is expected to have knowledge of the facts that give rise to the complaint, as well as facts that give rise to the defenses asserted in this matter.

3.      Tricia Baressi
        Marketing Director
        Shuster Laboratories, Inc.
        85 John Road
        Canton, MA  02025

Ms. Baressi is expected to have knowledge of the facts that give rise to the complaint, as well as facts that give rise to the defenses asserted in this matter.

4.      Ellen Candela
        Shuster Laboratories, Inc.
        85 John Road
        Canton, MA  02025

Ms. Candela is expected to have knowledge of the facts that give rise to the complaint, as well as facts that give rise to the defenses asserted in this matter.

5.      Ron Peterson
        Formerly of Shuster Laboratories, Inc.
        85 John Road
        Canton, MA  02025
        Last known whereabouts, Bridgewater, MA

Mr. Peterson is expected to have knowledge of Plaintiff's job performance while he was at Shuster.

6.      Kaveh Ashfar, Vice President
        Shuster Laboratories, Inc.
        85 John Road
        Canton, MA  02025

Mr. Ashfar is expected to have knowledge of the facts that give rise to the complaint, as well as facts that give rise to the defenses asserted in this matter.

7.      Phil Katz, former President
        Shuster Laboratories, Inc.
        85 John Road
        Canton, MA  02025

Upon information and belief, Mr. Katz now resides at
17345 Vonyeur Drive
Punta Gorda, FL  33983

Mr. Katz is expected to have knowledge of the Plaintiff's job performance, is expected to have knowledge of how he praised the Plaintiff's job performance, and is expected to have knowledge of the facts which give rise to the complaint.

8.     Christine Gordon, Administrative Assistant
Shuster Laboratories, Inc.
85 John Road
Canton, MA  02025

Ms. Gordon is an administrative assistant at Shuster who notarized the documents that Shuster submitted to the Massachusetts Commission Against Discrimination.  It is believed that she has knowledge of the facts which give rise to the complaint, as well as facts that give rise to the defenses asserted herein.

9.     Janice Flowers, Consultant
Shuster Laboratories, Inc.
85 John Road
Canton, MA  02025

Ms. Flowers is expected to have knowledge of Plaintiff's job performance while she was Plaintiff's supervisor.

10.     Maryann Sullivan, Account Manager
Shuster Laboratories, Inc.
85 John Road
Canton, MA  02025

Ms. Sullivan is expected to have knowledge of some of the facts which give rise to the complaint.

11.     Scott Williams, Project Manager
Shuster Laboratories, Inc.
85 John Road
Canton, MA  02025

Mr. Williams expected to have knowledge of some of the facts which give rise to the complaint.

12.    Angela Delaney, Office Manager
       Shuster Laboratories, Inc.
       85 John Road
       Canton, MA  02025

Ms. Delaney is expected to have knowledge of some of the facts which give rise to the complaint, and may have facts that give rise to the defenses asserted herein.

13.    Evelyn Matthews, Receptionist
       Shuster Laboratories, Inc.
       85 John Road
       Canton, MA  02025

Ms. Matthews is expected to have knowledge of some of the facts which give rise to the complaint, and may have facts that give rise to the defenses asserted herein.

14.    Denise Norden, Director of QC Laboratories
       Shuster Laboratories, Inc.
       85 John Road
       Canton, MA  02025

Ms. Norden is expected to have knowledge of the Plaintiff's job performance, among other facts that give rise to the complaint.

15.    Ralph Regine, Jr.
       108 Pacific Street, No. 3
       Rockland, MA  02370
       (617) 686-4978

Mr. Regine is expected to have knowledge of the Plaintiff's medical condition, as well as facts supporting her claim for emotional distress damages.

16.    Ralph Regine Sr.
       21 Claypool Drive
       Warwick, RI  02886
       (401) 738-7886

Mr. Regine is expected to have knowledge of the Plaintiff's medical condition, as well as facts supporting her claim for emotional distress damages.

17.    Donna Regine
       21 Claypool Drive
       Warwick, RI  02886
       (401) 738-7886

Mrs. Regine is expected to have knowledge of the Plaintiff's medical condition, as well as facts supporting her claim for emotional distress damages.

18.    Emerson F. Haslam, Jr.
       P.O. Box 3134
       Edgartown, MA
       (508) 627-3919

Mr. Haslam is expected to have knowledge of the Plaintiff's medical condition, as well as her facts supporting her claim for emotional distress damages.  He is also expected to knowledge concerning some of the facts alleged in the complaint, including but not limited to Shuster's requirement of medical documentation.

19.    Douglas Vargas, Accounting
       Shuster Laboratories, Inc.
       85 John Road
       Canton, MA  02025

Mr. Vargas is expected to have knowledge of the facts that give rise to the complaint, as well as facts that give rise to the defenses asserted in this matter.

B.    <u>Documents:</u>

Attached hereto and disclosed herewith are documents 1 through 505 inclusive.

C.    <u>Damages</u>:

Certain documents pertaining to damages are included in the documents disclosed in Part B here.  Other documents pertaining to damages will be produced when made available.   If determined to be appropriate, an economist will be retained and a report submitted.

D.    <u>Insurance:</u>

Not applicable to this Plaintiff.

THE PLAINTIFF,
Alicia Haslam

DATED:        July 19, 2005


By:_____
William J. McLeod, BBO 560572
McLEOD & ASSOCIATES, PC
77 Franklin Street
Boston, MA  02110
(617) 542-2956/phone
(617) 695-2778/fax

**Original Transcript**
**EXHIBIT B**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ALICIA HASLAM,

        Plaintiff,

    VS                       CIVIL NUMBER: 05-10809 RWZ

SHUSTER LABORATORIES, INC.,

        Defendant.

---

**DEPOSITION OF**

**MARYANN SULLIVAN**

June 12, 2006
11:06 a.m.

McLeod Law Offices
77 Franklin Street
Boston, Massachusetts

Ayako Odanaka, Notary Public, Certified Shorthand Reporter and
Registered Professional Reporter within and for the Commonwealth of Massachusetts



**Jack Daniel**
**Court Reporting & Video Services**

Technologies you can use • Experience you can Trust

141 Portland Street, Suite 200, Boston, Massachusetts 02114
Phone: 617.557.0039 • Toll Free: 866.814.0039 • Toll Free Fax: 866.557.0041
www.jackdanielreporting.com

2

1                           A P P E A R A N C E S :

2

3  **ON BEHALF OF PLAINTIFF:**

4  WILLIAM J. MCLEOD, ESQ.

5        McLeod Law Offices, P.C.

6        77 Franklin Street

7        Boston, Massachusetts 02110

8        617.542.2956

9        wjm@mcleodlawoffices.com

10

11  **ON BEHALF OF DEFENDANT:**

12  LIAM T. O'CONNELL, ESQ.

13        Holland & Knight, LLP

14        10 St. James Avenue

15        Boston, Massachusetts 02116

16        617.305.2020

17        liam.oconnell@hklaw.com

18

19  **ALSO PRESENT:**

20        ALICIA HASLAM

21

22

23

24



**Jack Daniel**
Court Reporting & Video Services inc
Technologies you can use • Experience you can Trust

Direct Dial:    617.557.0039
Toll Free:     866.814.0039
Toll Free Fax:  866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

1        DEPOSITION OF MARYANN SULLIVAN

2              JUNE 12, 2006

3                PROCEEDINGS:

4              MR. MCLEOD:  Same stips?

5              MR. O'CONNELL:  Sure.

6              MR. MCLEOD:  Witness will

7    read and sign 30 days?

8              MR. O'CONNELL:  We'll waive

9    the notary.

10             MR. MCLEOD:  Okay.  And

11   objections -- objections with exception to

12   form -- with the exception of those to

13   form are reserved until trial, motions to

14   strike are also reserved.

15        Could you swear the witness,

16   please?

17        *MARYANN SULLIVAN*, the deponent,

18   having been satisfactorily identified and

19   duly sworn by the Notary Public, was

20   examined and testified as follows:

21        EXAMINATION

22        BY-MR.MCLEOD:

23     Q.  Could you state your name for the

24   record?



Jack Daniel
Court Reporting & Video Services
Inc
Technologies you can use • Experience you can Trust

Direct Dial:      617.557.0039
Toll Free:        866.814.0039
Toll Free Fax:    866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

EXHIBIT B

59

1    A.   No.

2    Q.   -- keep in touch with her; anything

3    like that?

4    A.   Never.

5    Q.   Okay.

6    A.   No.

7    Q.   Now, you had testified before that

8    you had received a letter from my office

9    and that's when you learned for the first

10   time that you were going to be deposed in

11   this case?

12   A.   Correct.

13   Q.   Prior to that you had no knowledge

14   that you were going to be deposed?

15   A.   No.

16   Q.   Did you know prior to that that you

17   were identified as the person who had

18   knowledge concerning the facts of the

19   case?

20   A.   No.

21   Q.   Okay.  At some point did you retain

22   the services of Mr. O'Connell?

23   A.   No.  I mean --

24                MR. O'CONNELL:   You can



Jack Daniel
Court Reporting & Video Services Inc.
Technologies you can use • Experience you can Trust

Direct Dial:      617.557.0039
Toll Free:        866.814.0039
Toll Free Fax:    866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

60

1  answer the question.

2      A.   No, I didn't retain him myself, no.

3      Q.   Okay.  Who did?

4      A.   I believe he's Shuster's lawyer.

5      Q.   Okay.

6      A.   And I was told that he would

7  accompany me here.

8      Q.   Okay.  He would accompany you?

9      A.   Or he would be -- when I came.

10     Q.   Okay.

11     A.   Isn't that accompany?

12     Q.   Lawyers are stickler for words.  Is

13 he representing you here today?

14     A.   I believe he's representing me as a

15 Shuster employee.

16     Q.   Okay.  Did you ever seek out legal

17 advice from Mr. O'Connell?

18     A.   No.

19     Q.   Okay.  Prior to your being notified

20 of this deposition or the intent to be

21 deposed by virtue of a letter from my

22 office, had you ever consulted with any

23 attorney concerning Ms. Haslam?

24     A.   No.



Jack Daniel
Court Reporting & Video Services Inc

Technologies you can use • Experience you can Trust

Direct Dial:      617.557.0039
Toll Free:       866.814.0039
Toll Free Fax:   866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

1    Q.   Okay.   Sitting here today, do you

2    have any concerns that anything you did or

3    said resulted in Ms. Haslam being fired?

4    A.   No.   None whatsoever.

5              MR. O'CONNELL:   Objection to

6    form.

7        BY MR. MCLEOD:

8    Q.   Okay.   Did you meet with Attorney

9    O'Connell to prepare for the deposition?

10   A.   We met -- Scott and I both met

11   with him Friday at work just to tell us

12   where it was.   That's it.

13   Q.   And how long did that meeting take

14   place?

15   A.   Maybe 15 minutes.

16   Q.   Who was the person at Shuster that

17   told you that Mr. O'Connell was going to

18   be accompanying you here at this

19   deposition today?

20   A.   Claudia.

21   Q.   And when did she tell you that?

22   A.   When I came to work with my letter.

23   Q.   Okay.   So was there any reason why

24   you -- Strike.



**Jack Daniel**
Court Reporting & Video Services Inc
Technologies you can use • Experience you can Trust

Direct Dial:      617.557.0039
Toll Free:        866.814.0039
Toll Free Fax:    866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

62

1    You say you came to work with the

2 letter.  Can you describe for me the

3 events of that day?

4    A.  My husband called me at work Monday

5 afternoon and said, you've got a letter

6 here.  And he opened it for me and told

7 me what it was.  And so I brought it in

8 Tuesday and brought it in to Claudia and I

9 said, what's this all about?  And she says

10 that it was about Alicia and that -- don't

11 worry because when you go there our lawyer

12 will be with you.

13    Q.  Okay.

14    A.  I said okay.  And I said but this

15 date?  She said wait, let the lawyers --

16 because neither of you -- you can't go

17 until both lawyers -- it's convenient for

18 them so...

19    Q.  Okay.  Any other discussion with

20 Ms. Haslam -- pardon me, with Ms. Montez

21 about --

22    A.  No.

23    Q.  -- the letter?

24    A.  She just asked me what days



**Jack Daniel**
**Court Reporting & Video Services** Inc
Technologies you can use • Experience you can Trust

Direct Dial:      617.557.0039
Toll Free:        866.814.0039
Toll Free Fax:    866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

EXHIBIT B

63

1    couldn't I go because I'm usually off on

2    Mondays.  And I said it didn't matter.

3    Just let me know ahead of time.

4        Q.  Okay.  Did you have any discussions

5    with anyone else at Shuster concerning

6    your deposition in this case?

7        A.  No.

8        Q.  Okay.  So then you had your initial

9    discussion with Ms. Montez?

10       A.  Mm-hmm.

11       Q.  And then had you a meeting with Mr.

12   O'Connell on Friday?

13       A.  Mm-hmm.

14       Q.  And Mr. Williams was also in

15   attendance at that meeting?

16       A.  Correct.

17       Q.  Now, at any point did you meet with

18   Mr. O'Connell alone?

19       A.  We just had coffee this morning.

20       Q.  Okay.  Was there anyone else in

21   attendance in the meeting on Friday?

22       A.  Scott Williams.

23       Q.  Oh, I know, I'm sorry.  Anyone

24   else?



Jack Daniel
Court Reporting & Video Services Inc
Technologies you can use • Experience you can Trust

Direct Dial:      617.557.0039
Toll Free:        866.814.0039
Toll Free Fax:    866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

64

```
 1      A.   On Friday?

 2      Q.   Mm-hmm.

 3      A.   No, it was just the four of us.

 4      Q.   The four of you?

 5      A.   Claudia --

 6      Q.   Okay.

 7      A.   -- Liam, Scott and myself.

 8      Q.   Okay.  And was Ms. Montez taking

 9   notes during that meeting?

10      A.   No.

11      Q.   No?  Did you?

12      A.   Just where Finagle a Bagel was.  He

13   said --

14      Q.   I'm confused.

15      A.   I'll meet you at Finagle A Bagel.

16   And I said okay, where is it.

17      Q.   Oh, okay, okay.  Thanks.  Okay.

18   Do you know if Mr. Williams did?

19      A.   Take notes?

20      Q.   If he took notes?

21      A.   No, we both had paper and pencil.

22   But -- and he just gave us his cell phone

23   and your phone, office and address; that

24   was it.
```



**Jack Daniel**
**Court Reporting & Video Services** Inc

Technologies you can use • Experience you can Trust

Direct Dial:        617.557.0039
Toll Free:          866.814.0039
Toll Free Fax:      866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

1    Q. Okay. Did you ever -- ever express

2    any concerns that you could be personally

3    liable in this case for anything?

4    A. I think --

5                   MR. O'CONNELL: Objection to

6    form.

7          Go ahead.

8    A. I don't -- I don't understand.

9    Q. Did you ever express concerns that

10    you might be held responsible for Ms.

11    Haslam's termination?

12    A. No, because --

13                  MR. O'CONNELL: Objection to

14    form.

15    A. -- I was not.

16    Q. And did you ever express any

17    concerns that you could be held

18    responsible for any of the adverse

19    treatment that she alleges in this case?

20                  MR. O'CONNELL: Objection to

21    form.

22          Go ahead.

23    A. No.

24    Q. Okay. So you never sought out



**Jack Daniel**
**Court Reporting & Video Services**
Inc
Technologies you can use • Experience you can Trust

Direct Dial:    617.557.0039
Toll Free:      866.814.0039
Toll Free Fax:  866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

66

1    legal advice from Mr. O'Connell?  You were

2    told that he was going to accompany you?

3        A.  Yes.

4                    MR. O'CONNELL:  Objection to

5    form.

6            BY MR. MCLEOD:

7        Q.  Is that why you met with him on

8    Friday?

9                    MR. O'CONNELL:  Objection to

10   form.

11       A.  We met with him because Claudia

12   said to know what he looked like and to

13   get the instructions on where to come.

14       Q.  Okay.  How long was that meeting?

15       A.  You just asked that.

16       Q.  I think I'm confusing the meetings.

17   The meeting on Friday and then there was a

18   meeting this morning?

19       A.  Meeting this morning was two

20   minutes.

21       Q.  Okay.

22       A.  We talked family talk.

23       Q.  Okay.

24       A.  My husband is with me.



**Jack Daniel**
**Court Reporting & Video Services** Inc

Technologies you can use • Experience you can Trust

Direct Dial:        617.557.0039
Toll Free:          866.814.0039
Toll Free Fax:      866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

1    Q.   Okay.

2    A.   Friday's meeting was 15, 20 minutes

3 the longest.

4    Q.   Okay.   And where did the meeting

5 take place?

6    A.   In one of the conference rooms at

7 Shuster.

8    Q.   Okay.

9    A.   The meeting today was across the

10 street.

11    Q.   You never signed a retainer

12 agreement for Mr. O'Connell's

13 representation, correct?

14    A.   Correct.

15    Q.   Were you instructed not to seek out

16 advice of your own individual counsel?

17    A.   Never.

18    Q.   Okay.   And sitting here today, do

19 you believe that Mr. O'Connell is

20 representing you personally?

21              MR. O'CONNELL:   Objection to

22 form.

23    A.   As an employee of Shuster I

24 believe, which is personal, is it not?



Jack Daniel
Court Reporting & Video Services
Inc
Technologies you can use ▪ Experience you can Trust

Direct Dial:        617.557.0039
Toll Free:          866.814.0039
Toll Free Fax:      866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

68

1      Q.   I can't answer questions.   That's

2  the easiest way I can address that

3  question.

4           At any time were you ever warned or

5  cautioned that your testimony was going to

6  jeopardize your job?

7      A.   No.

8                 MR. O'CONNELL:   Objection to

9  form.

10          BY MR. MCLEOD:

11     Q.   Okay.   Can you tell me then what

12 was discussed at the meeting on Friday?

13                MR. O'CONNELL:   Hold on.

14 Objection to form, and I instruct the

15 witness not to answer on the basis of

16 attorney-client privilege.

17                MR. MCLEOD:   Okay.   Is

18 Shuster taking the position -- well --

19 Strike.

20          Can you tell me on what basis

21 you're asserting -- Shuster is asserting

22 the attorney-client privilege?

23                MR. O'CONNELL:   We are

24 defendant in a lawsuit, Bill.



**J̶ack Daniel**
**Court Reporting & Video Services**
Inc
Technologies you can use • Experience you can Trust

Direct Dial:        617.557.0039
Toll Free:          866.814.0039
Toll Free Fax:      866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

69

1          MR. MCLEOD:  Mm-hmm.

2          MR. O'CONNELL:  It's

3    entirely normal course of business for a

4    company to represent an employee --

5    present employee of the company that's

6    being deposed.  The attorney-client

7    privilege runs through to that employee

8    when they're testifying for purposes of

9    this case.

10         MR. MCLEOD:  I disagree with

11   you.  There's case law on that that says

12   that --

13         MR. O'CONNELL:  Go ahead,

14   mark the deposition.

15         MR. MCLEOD:  I'm going to

16   mark the deposition.  I just want to make

17   sure that the record is clear on this.

18         MR. O'CONNELL:  You've had

19   my statement.

20         MR. MCLEOD:  I do and I

21   just want to make sure that the record is

22   clear in case you do want to respond.  I

23   believe the case law is clear.  I do

24   believe I'm entitled to all the



**Jack Daniel**
**Court Reporting & Video Services** Inc
Technologies you can use • Experience you can Trust

Direct Dial:      617.557.0039
Toll Free:        866.814.0039
Toll Free Fax:    866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

73                  *EXHIBIT B*

1   let's just take a quick break.

2                   MR. O'CONNELL:  Sure.

3                   (Brief break).

4                   MR. MCLEOD:  I don't have

5   any further questions.

6                   MR. O'CONNELL:  Okay.

7                   MR. MCLEOD:  You don't have

8   any questions?

9                   MR. O'CONNELL:  I have none.

10                  MR. MCLEOD:  Okay.  Then in

11  light of the discovery issues that were

12  raised, we're going to suspend for that

13  purpose, but that's it.  We're all set.

14                  THE WITNESS:  Okay.

15                  MR. O'CONNELL:  Okay.  Thank

16  you very much.

17                  (Deposition of MARYANN

18  SULLIVAN suspended at 12:13 p.m.)

19

20

21

22

23

24



Jack Daniel
Court Reporting & Video Services
Inc
Technologies you can use • Experience you can Trust

Direct Dial:      617.557.0039
Toll Free:        866.814.0039
Toll Free Fax:    866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

EXHIBIT B

75

1        COMMONWEALTH OF MASSACHUSETTS

2

3        I, AYAKO ODANAKA, a Professional

4    Shorthand Reporter and Notary Public in

5    and for the Commonwealth of Massachusetts,

6    do hereby certify that the witness whose

7    deposition is hereinbefore set forth was

8    duly sworn, and that such deposition is a

9    true record of the testimony given by the

10   witness.

11       I further certify that I am neither

12   related to or employed by any of the

13   parties in or counsel to this action, nor

14   am I financially interested in the outcome

15   of this action.

16       In witness whereof, I have hereunto set

17   my hand and seal this 29th day of June,

18   2006.

19

20   

21   Ayako Odanaka

22   Notary Public

23   My commission expires February 25, 2011

24

Jack Daniel
Court Reporting & Video Services
Inc

Technologies you can use • Experience you can Trust

Direct Dial:      617.557.0039
Toll Free:        866.814.0039
Toll Free Fax:    866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

Original Transcript

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

ALICIA HASLAM,

       Plaintiff,

    VS                      CIVIL ACTION NUMBER:
                               05-10809 RWZ

SHUSTER LABORATORIES, INC.,

       Defendant.

*CONTAINS CONFIDENTIAL EXCERPTS*

DEPOSITION OF

SCOTT WILLIAMS

June 13, 2006
10:03 a.m.

McLeod Law Offices
77 Franklin Street
Boston, Massachusetts 02110

Maureen A. Cournoyer, Notary Public and Professional Shorthand Reporter,
within and for the Commonwealth of Massachusetts.



Technologies you can use • Experience you can Trust

141 Portland Street, Suite 200, Boston, Massachusetts 02114
Phone: 617.557.0039 • Toll Free: 866.814.0039 • Toll Free Fax: 866.557.0041
www.jackdanielreporting.com

1                              A P P E A R A N C E S :

2

3    **ON BEHALF OF PLAINTIFF:**

4    WILLIAM J. McLEOD, ESQUIRE

5           McLeod Law Offices

6           77 Franklin Street

7           Boston, Massachusetts 02110

8           617.542.2956

9           Wjm@mcleodlawoffices.com

10

11   **ON BEHALF OF SHUSTER LABORATORIES, INC.**

12   **and SCOTT WILLIAMS:**

13   LIAM T. O'CONNELL, ESQUIRE

14          Holland & Knight LLP

15          10 St. James Avenue

16          Boston, Massachusetts 02116

17          617.305.2020

18          Liam.oconnell@hklaw.com

19

20   **ALSO PRESENT:**

21   ALICIA M. HASLAM

22

23

24



**Jack Daniel**
Court Reporting & Video Services
Inc
Technologies you can use • Experience you can Trust

Direct Dial:        617.557.0039
Toll Free:          866.814.0039
Toll Free Fax:      866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

1         **DEPOSITION  OF  SCOTT  WILLIAMS**

2               **JUNE  13,  2006**

3                 PROCEEDINGS:

4         **SCOTT  WILLIAMS**,  the  witness,  having

5    been  satisfactorily  identified  and  duly

6    sworn  by  the  Notary  Public,  was  examined

7    and  testified  as  follows:

8         **EXAMINATION**

9         **BY-MR.McLEOD:**

10    Q.  Would  you  state  your  name  for  the

11    record,  please?

12    A.  Scott  Williams.

13    Q.  Mr.  Williams,  my  name  is  Bill

14    McLeod.  I  represent  Alicia  Haslam  in  a

15    case  that  she's  brought  against  Shuster

16    Labs.  You  are  here  today  pursuant  to  a

17    subpoena,  and  the  oath  you've  just  taken

18    is  the  same  one  you  would  take  in  a  court

19    of  law.

20         I'm  going  to  be  asking  you  some

21    questions  today,  and  the  answers  you  give

22    me  need  to  be  verbal.  The  court  reporter

23    can't  take  down  shakes  or  nods  of  the  head

24    or  hand  gestures  or  anything  like  that.



**Jack Daniel**
**Court Reporting & Video Services** Inc
Technologies you can use • Experience you can Trust

Direct Dial:      617.557.0039
Toll Free:        866.814.0039
Toll Free Fax:    866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts  02114

**EXHIBIT C**

1   that?

2       A.   No.

3       Q.   And did you express your surprise

4   to Ms. Montez when you got the subpoena?

5       A.   I think I was more concerned for

6   myself than anything else.

7       Q.   Why were you concerned for

8   yourself?

9       A.   Well, I didn't know why I was being

10  brought in.

11      Q.   Were you concerned that you did

12  something wrong?

13      A.   No.

14      Q.   Were you concerned that you did

15  something that might result in your

16  getting sued?

17      A.   No.

18      Q.   Okay.  And so then why were you

19  concerned?

20      A.   I'm not generally somebody who is

21  deposed on issues, so I didn't know where

22  it was coming from.  I didn't know of

23  this suit, so I didn't know what my role

24  was going to be.  I didn't know what I



**Jack Daniel**
Court Reporting & Video Services Inc

Technologies you can use • Experience you can Trust

Direct Dial:      617.557.0039
Toll Free:        866.814.0039
Toll Free Fax:    866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

94

1  could and couldn't talk about.

2      Q.  But you didn't believe you did

3  anything wrong?

4      A.  No.

5      Q.  So was your concern only with

6  regard to your job?

7                  MR. O'CONNELL:  Objection to

8  form.

9      A.  No.  My concern is any time that

10 I'm brought into the legal system.  I

11 think anybody would be.

12                  (Whereupon, the following

13 question, page 5, Has been marked

14 confidential and has been excerpted and

15 bound separately).

16

17

18

19

20

21

22

23

24



**Jack Daniel**
**Court Reporting & Video Services** Inc
Technologies you can use • Experience you can Trust

Direct Dial:      617.557.0039
Toll Free:        866.814.0039
Toll Free Fax:    866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

1      Q.   And how many times, other than with

2  your drunk driving arrest and conviction,

3  were you brought into the legal system?

4              (Whereupon, confidential

5  testimony ends).



Direct Dial:        617.557.0039
Toll Free:          866.814.0039
Toll Free Fax:      866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

96

1    A.   This is the only other time.

2    Q.   You don't recall ever walking --

3    Strike.

4         Do you recall the day Ms. Haslam

5    returned to work from her medical leave?

6    A.   No.

7    Q.   You don't recall?

8    A.   No.

9    Q.   It was uneventful?

10   A.   Yeah.

11   Q.   Where was her office in relation to

12   yours?

13   A.   She was two cubicles up, one over,

14   and she was in an office.

15   Q.   Okay.  And did you stop in and say

16   hello or anything like that?

17   A.   I would think so.     .

18   Q.   Well, I would think so, is that a

19   yes or a no?

20             MR. O'CONNELL:   Objection to

21   form.

22   A.   I'd say yes.

23   Q.   Okay.  Was anything else discussed?

24   A.   Either that day or the following



**Jack Daniel**
**Court Reporting & Video Services** Inc

Technologies you can use • Experience you can Trust

Direct Dial:      617.557.0039
Toll Free:        866.814.0039
Toll Free Fax:    866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

*EXHIBIT C*

1   day, I asked to sit with her to have a

2   meeting to discuss her accounts as she

3   would be taking them back.

4       Q.  Okay.  And during that meeting, or

5   the first day, did you ever say, "We're

6   surprised that you came back.  We didn't

7   think you were coming back," or words to

8   that effect?

9       A.  Not that I remember.

10      Q.  Not that I remember, so then it's

11  possible you did say that?

12              MR. O'CONNELL:  Objection to

13  form.

14      A.  I could have said anything.  I

15  mean, I don't -- I would say no, but I

16  can't be a hundred percent certain what I

17  said or what I didn't say that day.

18      Q.  Okay.  Well, did you ever say it

19  to her, that you were surprised that she

20  was coming back?

21      A.  I'm going -- I'm going to say no.

22      Q.  You never said that to her.  That's

23  your testimony?

24      A.  Yes.



**Jack Daniel**
Court Reporting & Video Services
Inc.
Technologies you can use • Experience you can Trust

Direct Dial:       617.557.0039
Toll Free:         866.814.0039
Toll Free Fax:     866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

98

1      Q.   Okay.   And you never had any

2    discussions on when Ms. -- with anyone

3    when Ms. Haslam was on leave that you

4    didn't expect her to come back, or that

5    the company didn't expect her to come

6    back?

7      A.   No.

8      Q.   Okay.   Other than your one meeting

9    with Mr. O'Connell on Friday, did you have

10   any other meetings or discussions with Mr.

11   O'Connell?

12     A.   No.

13     Q.   You didn't meet with him this

14   morning?

15     A.   Oh, yes.   I'm sorry.

16     Q.   How long was that meeting?

17     A.   Ten minutes.

18     Q.   And did you meet with him

19   yesterday?

20     A.   No.

21     Q.   Did you confer with him yesterday?

22     A.   No.

23     Q.   Did you confer with Ms. Montez

24   yesterday?



**Jack Daniel**
**Court Reporting & Video Services** inc
Technologies you can use • Experience you can Trust

Direct Dial:     617.557.0039
Toll Free:       866.814.0039
Toll Free Fax:   866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

1      A.   No.

2      Q.   Did you confer with anybody over

3  the weekend about your deposition?

4      A.   No.

5      Q.   On Friday, who attended the

6  meeting?

7      A.   It was Mr. O'Connell, myself, Mary

8  Anne and Claudia.

9      Q.   Anyone else?

10      A.   No.

11      Q.   During the meeting, those four

12  people were always present?

13      A.   Yes.   No.   Mr. O'Connell and I met

14  for a few minutes before Claudia and Mary

15  Anne arrived.

16      Q.   And how long was that meeting?

17      A.   About five minutes.

18      Q.   And what was discussed at that

19  meeting?

20      A.   That Mary --

21              MR. O'CONNELL:   Hold on.

22  You can answer that question to the extent

23  that you don't reveal any legal counsel

24  that was provided by me to you.



Jack Daniel
Court Reporting & Video Services
Inc
Technologies you can use • Experience you can Trust

Direct Dial:      617.557.0039
Toll Free:        866.814.0039
Toll Free Fax:    866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

100

1        THE WITNESS:  Okay.

2              MR. O'CONNELL:  So generally

3    you can describe the general parameters of

4    that meeting without revealing counsel that

5    you received from a lawyer.  Okay?

6              THE WITNESS:  Sure.

7      A.  Before everybody arrived?

8      Q.  Yes.

9      A.  Okay.  I let him know that Mary

10   Anne was on the phone, she'd be on her

11   way in, and then I told him when I

12   received the subpoena.

13     Q.  Okay.  And is it your testimony

14   that Mr. O'Connell provided legal counsel

15   to you during that meeting?

16              MR. O'CONNELL:  Objection to

17   form.

18     A.  Yeah.

19     Q.  Okay.  Did you seek out that legal

20   counsel?

21     A.  Partially.

22     Q.  You did?  Why did you seek that

23   legal counsel?

24              MR. O'CONNELL:  Objection to



**Jack Daniel**
**Court Reporting & Video Services** Inc

Technologies you can use • Experience you can Trust

Direct Dial:      617.557.0039
Toll Free:        866.814.0039
Toll Free Fax:    866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

1   form.

2          Go ahead.

3      A.   For the same reason I saw Ms.

4   Montez, as to the boundaries of client

5   confidentiality.

6      Q.   Any other reason?

7      A.   No.

8      Q.   And you didn't retain Mr. O'Connell

9   to represent you, did you?

10              MR. O'CONNELL:   Objection to

11  form.

12     A.   No.

13              MR. O'CONNELL:   Well,

14  objection to form.

15          And for the record, and I think

16  I've notified you of this before the

17  deposition started, Bill, I am counsel for

18  the witness, and have stated prior to this

19  deposition.  So he -- you know, asking him

20  the technical meaning of retained, I'll

21  just object to that, but state for the

22  record that I'm appearing both as counsel

23  for Shuster and counsel for the witness.

24              MR. McLEOD:   Okay.   And as



**J**ack **Daniel**
Court Reporting & Video Services
Inc
Technologies you can use • Experience you can Trust

Direct Dial:      617.557.0039
Toll Free:        866.814.0039
Toll Free Fax:    866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

102

1    I discussed yesterday, that's something

2    that we respectfully dispute in terms of

3    the scope of the representation.

4              BY MR. McLEOD:

5         Q.   With regard -- Did you ever hire

6    Mr. O'Connell to represent you?

7                   MR. O'CONNELL:   Objection to

8    form.

9         A.   Personally, no.

10        Q.   But the company hired him to

11   represent you?

12                  MR. O'CONNELL:   Objection to

13   form.

14             BY MR. McLEOD:

15        Q.   Is that your understanding?

16        A.   I guess so.   Yeah.

17        Q.   Okay.   But you're not here as a

18   representative of the company, are you?

19                  MR. O'CONNELL:   Objection to

20   form.

21        A.   I don't know.

22        Q.   What do you mean you don't know?

23   Are you or aren't you?

24                  MR. O'CONNELL:   Objection to



**Jack Daniel**
Court Reporting & Video Services Inc
Technologies you can use • Experience you can Trust

Direct Dial:      617.557.0039
Toll Free:        866.814.0039
Toll Free Fax:    866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

*EXHIBIT C*

```
 1  the form.
 2       A.   The subpoena was to me
 3  personally --
 4       Q.   Right.
 5       A.   -- and though the only knowledge I
 6  have of Ms. Haslam is through my
 7  profession.
 8       Q.   But sitting here today, do you
 9  believe you're speaking on behalf of the
10  company?
11       A.   Oh, no.  I'm speaking on behalf of
12  myself.
13       Q.   Okay.  Thank you.
14            Were you ever advised of a
15  potential conflict of interest between --
16  Strike.
17            Were you ever advised -- Strike.
18            Did you waive any conflict of
19  interest in having Mr. O'Connell represent
20  you?
21                 MR. McLEOD:  You might want
22  to object to the form on that one, too.
23                 MR. O'CONNELL:  Objection to
24  form, and can you -- can you reread that
```



Jack Daniel
Court Reporting & Video Services Inc
Technologies you can use • Experience you can Trust

Direct Dial:      617.557.0039
Toll Free:        866.814.0039
Toll Free Fax:    866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

104

1  question?

2           MR. McLEOD:  Yeah.  I might

3  strike it.

4           (Question read).

5           MR. O'CONNELL:  Okay.

6  Object to the form, and I'll instruct the

7  witness that you can answer that question

8  to the extent that you are not divulging

9  legal counsel that you received from your

10  lawyer.

11     A.  I don't know.

12     Q.  Okay.  Are you answering that

13  subject to your counsel's instruction?

14     A.  No.  I really don't know.

15     Q.  Okay.  Were you ever told to

16  consult with your own counsel?

17     A.  No.

18     Q.  Were you --

19           MR. O'CONNELL:  Again, just

20  slow down here, okay?

21           THE WITNESS:  Sorry.

22           MR. O'CONNELL:  Objection to

23  form.  And the instruction is that you can

24  answer that question to the extent that


Jack Daniel
Court Reporting & Video Services inc

Technologies you can use • Experience you can Trust

Direct Dial:      617.557.0039
Toll Free:        866.814.0039
Toll Free Fax:    866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

*EXHIBIT C*

1  you're not revealing counsel that you

2  received from your lawyer.

3          MR. McLEOD:  Okay.  And

4  just for the record, I just want to mark

5  this portion of testimony for the purposes

6  of filing a motion on that, on this

7  particular issue, which we had also

8  discussed yesterday.

9      BY MR. McLEOD:

10     Q.  Did you consult with your own

11 counsel concerning your deposition here

12 today?

13          MR. O'CONNELL:  Objection to

14 form.

15          And again, Bill, for the record,

16 and this applies to both Mary Anne

17 Sullivan and to this witness.  And I'll

18 state it again for the record, you're

19 using the term own counsel.

20          MR. McLEOD:  Mm-hmm.

21          MR. O'CONNELL:  I am

22 representing them for purposes of these

23 proceedings.

24          MR. McLEOD:  Okay.  Then



**Jack Daniel**
**Court Reporting & Video Services** inc

Technologies you can use  ▪  Experience you can Trust

Direct Dial:      617.557.0039
Toll Free:        866.814.0039
Toll Free Fax:    866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

106

1  I'll clarify the question.

2      BY MR. McLEOD:

3      Q.  Other than Mr. O'Connell, did you

4  confer with any other attorney?

5      A.  Yes.

6      Q.  Who?

7      A.  My future brother-in-law.

8      Q.  Who's he?

9      A.  Matthew Harper Nixon.

10     Q.  And where does he practice law?

11     A.  He does not.  He's a lawyer, but

12  he doesn't practice law.

13     Q.  Where does he --

14     A.  He works at Lawyers Weekly.

15     Q.  In Boston?

16     A.  Mm-hmm.

17     Q.  Where is he admitted to practice?

18     A.  In Boston.

19     Q.  In -- In Massachusetts?

20     A.  Yes.

21     Q.  Okay.  And -- But you said he's

22  not actively engaged in the practice of

23  law?

24     A.  Not that I know of.


**Jack Daniel**
**Court Reporting & Video Services**
Inc
Technologies you can use • Experience you can Trust

Direct Dial:     617.557.0039
Toll Free:       866.814.0039
Toll Free Fax:   866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

**EXHIBIT C**

107

1    Q.   Okay.   When did you call -- When

2    did you contact him?

3    A.   The day I received the subpoena.

4    Q.   Okay.   And what was the purpose in

5    contacting him?

6    A.   I asked him what a subpoena -- what

7    the subpoena meant and what a deposition

8    was.

9    Q.   Okay.   And was there any other

10   purpose in contacting him?

11   A.   Nope.

12   Q.   Okay.   And what --

13                MR. MCLEOD:   Let's go off

14   for a second.

15                (Discussion off the record.)

16        BY MR. McLEOD:

17   Q.   Since being in Massachusetts, have

18   you ever had an attorney?

19   A.   No.

20                MR. O'CONNELL:   Objection to

21   form.

22        BY MR. McLEOD:

23   Q.   Other than Mr. O'Connell, of

24   course?


**Jack Daniel**
Court Reporting & Video Services
Inc
Technologies you can use • Experience you can Trust

Direct Dial:      617.557.0039
Toll Free:        866.814.0039
Toll Free Fax:    866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

134                    *EXHIBIT C*

1      A.   Because they found it on the desk.

2      Q.   They lost it?

3      A.   Yeah.

4      Q.   Thank you.

5                    MR. O'CONNELL:   Objection to

6  form.

7                    MR. McLEOD:   I have nothing

8  further.

9                    MR. O'CONNELL:   Okay.

10  That's all I have.

11                   (Deposition of SCOTT

12  WILLIAMS, concluded at 11:57 p.m.).

13

14

15

16

17

18

19

20

21

22

23

24



**Jack Daniel**
**Court Reporting & Video Services** Inc

Technologies you can use • Experience you can Trust

Direct Dial:      617.557.0039
Toll Free:        866.814.0039
Toll Free Fax:    866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114

135                              *EXHIBIT C*

1          COMMONWEALTH  OF  MASSACHUSETTS

2

3      I, Maureen A. Cournoyer, a Shorthand

4  Reporter and Notary Public in and for the

5  Commonwealth of Massachusetts, do hereby

6  certify that the witness whose deposition

7  is hereinbefore set forth, was duly sworn

8  and that such deposition is a true record

9  of the testimony given by the witness.

10     I further certify that I am neither

11  related to or employed by any of the

12  parties in or counsel to this action, nor

13  am I financially interested in the outcome

14  of this action.

15     In witness whereof, I have hereunto set

16  my hand and seal this 10th day of July

17  2006.

18

19

20  *Maureen A. Cournoyer*

21     Maureen A. Cournoyer

22     Notary Public

23     My commission expires March 31, 2011

24



**Jack Daniel**
Court Reporting & Video Services
Inc
Technologies you can use • Experience you can Trust

Direct Dial:      617.557.0039
Toll Free:        866.814.0039
Toll Free Fax:    866.557.0041
www.jackdanielreporting.com

141 Portland Street, Suite 200
Boston, Massachusetts 02114